KHOUZAM, Judge.
 

 Pauline Copeland, as personal representative of the Estate of Willie F. Hogue (the Estate), appeals a final judgment entered against Wayne R. Buswell and Pateo Transport, Inc.
 
 [1]
 
 The trial court found that Mr. Buswell and Pateo Transport were liable for damages caused by the injury resulting in the death of Willie F. Hogue. The court awarded the Estate a portion of the damages sought on its behalf in a wrongful death action. The personal representative argues that the trial court erred by denying the Estate’s claim for damages for medical expenses incurred by the decedent, Mr. Hogue. The trial court declined to award medical expenses on the basis that the expenses had been satisfied by Mr. Buswell and Pateo Transport. Because Mr. Buswell and Pateo Transport’s payment improperly circumvented the priority of payments set forth in Florida’s probate code and because the payment was made without the knowledge and consent of the personal representative, we reverse the portion of the final judgment denying the claim for medical expenses. We affirm the remainder of the final judgment.
 

 Mr. Hogue was severely injured when his vehicle was struck by a trailer-truck driven by Mr. Buswell on behalf of his employer, Pateo Transport. Following the accident, Mr. Hogue received extensive medical treatment and care for a period of three months at Tampa General Hospital, until the date of his death in May 2005. Mr. Hogue incurred $492,224 in expenses at Tampa General, and the expenses for his funeral totaled $7788.
 

 In accordance with the probate code, a petition for administration of Mr. Hogue’s estate was filed by Ms. Copeland, who was Mr. Hogue’s sister, and she was appointed as the personal representative to administer the Estate.
 
 See
 
 §§ 733.202, .301, Fla. Stat. (2005). The personal representative thereafter filed a wrongful death action on behalf of the Estate against Mr. Buswell and Pateo Transport seeking to recover the medical and funeral expenses.
 

 Tampa General filed a lien in the probate case, pursuant to section 733.702, to preserve its rights against any recovery made by the Estate in the wrongful death action. In addition, early in the wrongful death action Tampa General moved to intervene seeking to recover the $492,224 in outstanding medical expenses. The trial court orally granted the motion to intervene, but no written order was filed. Without informing the Estate and without approval from the probate court, Mr. Bus-well and Pateo Transport and their insurer reached a settlement with Tampa General in the amount of $300,000. In return, Tampa General signed a general release absolving Mr. Buswell and Pateo Transport of all claims and releasing the personal representative.
 

 
 *869
 
 The Estate’s wrongful death lawsuit against Mr. Buswell and Pateo Transport proceeded to a nonjury trial. The Estate presented evidence regarding liability and damages. The court found Mr. Buswell solely at fault for causing the accident. It further found that Mr. Hogue incurred necessary medical expenses during his stay at Tampa General in the amount of $492,224 and that the expenses of the funeral were $7788.
 

 Prior to entering its final order, the trial court discussed the effect of the release and the payment of $300,000 made by Mr. Buswell and Pateo Transport directly to Tampa General. The trial court was troubled by the agreement that Mr. Buswell and Pateo Transport reached with Tampa General, which circumvented the priority of payments set forth in the probate code. However, the court ruled that it could not award damages for a satisfied debt in the wrongful death lawsuit. The court entered a judgment awarding only funeral expenses. This appeal follows.
 

 Under the Florida Wrongful Death Act, a personal representative has the exclusive right to pursue wrongful death claims, recover damages, and distribute assets on behalf of an estate. § 768.20, Fla. Stat. (2005);
 
 see also Martinez v. Ipox,
 
 925 So.2d 448, 449 (Fla. 2d DCA 2006);
 
 In re Estate of Catapane,
 
 759 So.2d 9 (Fla. 4th DCA 2000). In pertinent part, section 768.20 provides: “The action shall be brought by the decedent’s personal representative, who shall recover for the benefit of the decedent’s survivors and estate all damages, as specified in this act, caused by the injury resulting in death.” (Emphasis added.)
 

 The recoverable damages in a wrongful death action are specified in section 768.21. It provides, in pertinent part:
 

 Damages may be awarded as follows:
 

 (6) The decedent’s personal representative may recover for the decedent’s estate the following:
 

 (b)Medical or funeral expenses due to the decedent’s injury or death that have become a charge against her or his estate or that were paid by or on behalf of decedent....
 

 Section 768.21 further provides:
 

 (7) All awards for the decedent’s estate are subject to the claims of creditors who have complied with the requirements of probate law concerning claims.
 

 The statutory scheme establishing the order of priority for payment of claims in probate is set forth in section 733.707. Section 733.707(1) provides as follows:
 

 The personal representative shall pay the expenses of the administration and obligations of the decedent’s estate in the following order:
 

 (a) Class 1. — Costs, expenses of administration, and compensation of personal representatives and their attorneys fees and attorneys fees awarded under s. 733.106(3).
 

 (b) Class 2. — Reasonable funeral, interment, and grave marker expenses, whether paid by a guardian, the personal representative, or any other person, not to exceed the aggregate of $6,000.
 

 (c) Class 3. — Debts and taxes with preference under federal law, and claims pursuant to ss. 409.9101 and 414.28.
 

 (d) Class 4. — Reasonable and necessary medical and hospital expenses of the last 60 days of the last illness of the decedent, including compensation of persons attending the decedent.
 

 (h) Class 8. — All other claims, including those founded on judgments or de
 
 *870
 
 crees rendered against the decedent during the decedent’s lifetime, and any excess over the sums allowed in paragraphs (b) and (d).
 

 (2) After paying any preceding class, if the estate is insufficient to pay all of the next succeeding class, the creditors of the latter class shall be paid ratably in proportion to their respective claims.
 

 Under section 733.707, Tampa General’s claim for medical expenses would be designated as a class 4 claim to be paid after class 1, 2, or 3 claims.
 
 See
 
 § 733.707(l)(a)-(d). In this case, by virtue of Mr. Buswell and Pateo Transport’s action, Tampa General’s class 4 claim for medical expenses improperly took precedence over class 1 claims for costs of administration and class 2 claims for funeral expenses, in contravention of the priorities established in section 733.707.
 

 Mr. Buswell and Pateo Transport argue that they helped extinguish a debt against the Estate and that therefore it was appropriate for the trial court to have eliminated that debt as a measure of damages. What Mr. Buswell and Pateo Transport fail to recognize is that by virtue of their settlement with Tampa General, they not only circumvented the statutory priorities of chapter 733, but also effectively depleted potential assets of the Estate. It is clear that the Estate had no assets other than the proceeds of the wrongful death action. The court specifically found that the medical bills in the amount of $492,224 were reasonable and necessarily incurred in the treatment of the decedent and would have been awarded but for the release of Tampa General’s claim. Had the trial court awarded the full measure of damages, the Estate would have assets in excess of $500,000. It then would be the personal representative’s duty to distribute those amounts in accordance with the probate code and in a reasonable and equitable manner.
 
 See, e.g., Univ. Med. Ctr. v. Zeiler,
 
 625 So.2d 120 (Fla. 5th DCA 1993);
 
 Cont’l Nat’l Bank v. Brill,
 
 636 So.2d 782 (Fla. 3d DCA 1994).
 
 [2]
 
 By their actions, Mr. Buswell and Pateo Transport improperly usurped the personal representative’s duties and obligations to pursue claims and recover assets of the Estate.
 

 In this case, Tampa General filed its claim against the Estate in the probate action, and the medical expenses became a charge against the Estate. We hold that once the expenses became a charge against the Estate pursuant to section 768.21(6)(b) of the Wrongful Death Act, the personal representative had the exclusive authority to resolve those claims in a reasonable and equitable manner and in accordance with section 733.707 of the probate code.
 

 We therefore affirm the trial court’s finding of liability, but we reverse and remand as to the issues concerning damages and direct the trial court to enter a final judgment in accordance with this opinion.
 

 Affirmed in part, reversed in part, and remanded.
 

 SCHOONOVER, JACK R., Senior Judge, Concurs.
 

 VILLANTI, J., Concurs with opinion.
 

 VILLANTI, Judge, Concurs.
 

 I concur in the majority opinion but write to emphasize three points.
 

 
 *871
 
 First, as the majority points out, once an estate is opened the decedent’s creditors must settle any claims with the personal representative of the estate pursuant to Florida’s probate rules and statutes. No creditor of an estate is entitled to enter into a sweetheart deal with any entity owing money to the estate that would circumvent the statutory priority of creditors set forth in section 733.707(l)(a). This prohibition on “side deals” is especially important in cases when apportionment issues among creditors could arise, such as when there are insufficient estate assets to pay all claims. Principles of equity, order, and decorum should rule the apportionment process, not insider knowledge and arbitrary favoritism.
 

 Second, the alleged settlement imper-missibly conflated probate issues into the wrongful death action. As the trial court recognized, the wrongful death action was an asset of the Estate. Tampa General had a claim against the Estate. Tampa General also had lien rights pursuant to Hillsborough County Code section 14-90; however, any lien pursuant to that code provision attaches only to the proceeds of a judgment or settlement in favor of the injured person. Thus, Tampa General had no actionable claim against the tortfeasors, and the tortfeasors had no liability to Tampa General in the absence of an assignment of the Estate’s claim to Tampa General. Accordingly, the tortfeasors simply had no standing to settle any alleged claim of Tampa General against them because Tampa General had none. The fact that Tampa General might ultimately have received some of the proceeds in the probate case of any wrongful death judgment against the tortfeasors is immaterial. The two actions were wholly separate, and Tampa General’s purported release of its claim against the Estate in the probate action did not affect the tortfeasor’s liability to the Estate in the wrongful death action.
 

 Third, regardless of whether an estate is involved, I question the authority of a tort-feasor to settle with one of an injured party’s creditors without the injured party’s consent and to the ultimate detriment of the injured party. An injured party’s claims against a tortfeasor belong to the injured party — not the injured party’s creditors. Thus, any settlement of the injured party’s claims must be made with the injured party — not the injured party’s creditors — absent the consent of the injured party. Generally, once the tortfea-sor has settled the injured party’s claims, the injured party deals with his or her own creditors. While exceptions to this general rule might exist for payments made pursuant to contracts, i.e., health insurance, and certain settlements arising out of collateral sources of payments, no such exceptions exist outside of this context. Thus, even outside of the probate setting, a tortfeasor may not simply select a creditor of the injured party, settle with that creditor
 
 without the injured, party’s consent,
 
 and then disclaim any further responsibility to the injured party himself.
 

 The irregularities presented by the record in this case are numerous. For example, contrary to the trial court’s findings, the release signed by Tampa General does not actually release its claims against the Estate. Instead, it released only “PAULINE COPELAND, As Personal Representative of the Estate of WILLIE F. HOGUE.” Even though Tampa General had no claim against the tortfeasors and Tampa General’s proposed intervenor complaint alleged claims only against the Estate, counsel for the tortfeasors actively solicited a settlement of Tampa General’s claims without any notice to the personal representative. The settlement amount of $300,000 raises suspicions that the tortfea-
 
 *872
 
 sors deliberately and secretly exhausted their liability insurance coverage limits without notice to the personal representative, who was the plaintiff in the pending wrongful death action. While I do not wish to ascribe improper motives to any of the parties, it appears that both the tort-feasors and Tampa General decided that they could best further their own interests if they simply ignored both the personal representative and the constraints imposed on them by the legal system and worked together to deprive the Estate of its only appreciable asset. In a nation of laws, this is unacceptable.
 

 For all of these reasons, I agree with the majority that, on remand, the Estate is entitled to a judgment in its favor for the full amount of the damages established by the evidence at the bench trial.
 

 [1]
 

 . An amended final judgment entered on relinquishment of jurisdiction during the pen-dency of this appeal included an additional party as a defendant, Belleview Transport, Inc., that had not been included on the initial final judgment. At the oral argument, the parties advised this court that Belleview Transport had previously been released as a party to the trial court proceedings.
 

 [2]
 

 . Here, unlike the circumstances in
 
 University Medical Center,
 
 625 So.2d 120, and
 
 Continental National Bank,
 
 636 So.2d 782, Mr. Hogue left no survivors as they are defined under the Wrongful Death Act; however, the duty to distribute in a reasonable and equitable manner applies.